UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                      Plaintiff,

-against-

REGINALD MIDDLETON, et al,

                      Defendants.

19 Civ. 4625 (WFK)

ECF Case

## SUPPLEMENTAL DECLARATION OF ROSEANN DANIELLO

I, Roseann Daniello, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am over 18 years of age and am employed as a Staff Accountant in the Investigations Unit of the Division of Enforcement at the New York Regional Office of Plaintiff Securities and Exchange Commission ("Commission"). I have been employed by the Commission for over 27 years. My duties include, but are not limited to, assisting in the investigation of possible violations of the federal securities laws.

2.     On August 12, 2019, I made a Declaration in support of the Commission's Emergency Application for a Temporary Restraining Order Freezing Assets and Granting Other Relief (my "August 12 Declaration"). I make this Supplemental Declaration in further support of that application, and for purposes of the upcoming preliminary injunction hearing, currently scheduled for August 26, 2019.

3.     I am familiar with the facts and circumstances herein. I make this Declaration based upon, among other things: (a) my review and analysis of bank records produced in response to the Commission's investigative subpoenas issued on or before August 2, 2019; (b) my review and analysis of additional bank records produced in response to subpoenas issued

on August 14, 2019, pursuant to the Court's Order of expedited discovery issued on August 12, 2019 (the "Aug. 12 Order"); and (c) my own professional training, experience, and judgment.

4. In connection with the Commission's investigation, I have reviewed and summarized voluminous financial records—including bank account statements and backup documentation—for 16 bank accounts, some of which are maintained in the name of Reginald Middleton and others of which are maintained in the name of various entities (collectively, the "Accounts"). Attached as Exhibit 19 is a chart of bank accounts for which I have reviewed records. For each account, the chart indicates: 1) the name of the account holder; 2) the financial institution at which the account is maintained; 3) the last four digits of the account number, if known; and 4) the account balance, if known, as of March 31, 2017, as reflected on month-end or daily balances reflected in bank statements. As noted in the chart, as of March 31, 2017, the accounts for which the staff has received documentation contained less than $350.00.

5. Bank account records produced in response to investigative subpoenas were sent to a central processing location, from which they were added to a shared folder to which I had access. I monitored the folder and, when new records came in, I sent them to be processed, using a software program from Actionable Intelligence Technologies named Comprehensive Financial Investigative Solution, into Excel spreadsheeet form. I then reviewed the data to ensure that the running balance for each account matched the balances on the original statements. Next, I analyzed the information provided on the account statement (as captured in the Excel file by the software) and, where available, backup documentation, to determine the identity of the counterparty to each transaction. As described in my August 12 Declaration, I then analyzed each transaction and assigned it to a category.

6. I was asked to review and update certain aspects of my previous analysis of financial records in order to: 1) provide additional information not included in my previous declaration; 2) update information in my previous declaration to cover the time period April 1, 2017 through the present (the "Relevant Period"); and 3) correct certain errors included in my previous declaration.

### Sources of Significant Deposits into the Accounts

7. In my Declaration of August 12, 2019, I described how I had identified deposits in certain of the Accounts from certain sources, including Coinbase, Gemini Trust Company LLC, or Synapse Financial Technologies. I assumed that these sources were cryptocurrency trading platforms. Based on the records I had fully analyzed at that time, which included activity from April 3, 2017 through May 2018 for the relevant accounts, I had identified relevant deposits from these platforms to the Accounts with a total amount of $1,527,458.19. (See paragraphs 17 to 18; Exhibit 13.)

8. The Commission received additional bank records shortly before or after August 12 that I had not had time to analyze fully when I submitted the August 12 Declaration. Attached as Exhibit 20 is a collection of bank statements for an account in the name of Veritaseum Assets LLC maintained at Bank of America with account number ending in 1786 that were not yet available when I prepared my August 12, 2019 Declaration.

9. I have now updated my analysis of deposits from apparent cryptocurrency platforms to include additional deposits identified in the recently-produced records.

10. These additional deposits, like the deposits described in Exhibit 13 of my August 12 Declaration, appear to be from Coinbase, Gemini Trust Company LLC, or Synapse Financial Technologies. I assumed that deposits from Synapse Users, which came from the same bank as the deposits I observed from Synapse Financial Technologies, were both from the same

3

cryptocurrency platform. The total amount of deposits into the Accounts from these sources during the time period covered by the additional bank records, June 2018 through July 2019, was $5,137,463.89.

11. As reflected in the attached Exhibit 21, which is an updated version of the analysis previously submitted as Exhibit 13 to my August 12 Declaration, the total amount of deposits from apparent crypto currency platforms, from April 1, 2017 through July 31, 2019, was $6,664,922.08. The chart below summarizes the transfers by the source of funds and the holder of the account that received the funds:

|  | Coinbase.com | Gemini Trust Company LLC | Synapse Financial Technologies | Grand Total |
|---|---|---|---|---|
| Middleton Citi 1630 | $24,419.09 | $215,580.62 |  | $239,999.71 |
| Veritaseum Assets LLC |  |  | $2,150,584.06 | $2,150,584.06 |
| Veritaseum Inc. Citi 4865 | $3,879.00 |  |  | $3,879.00 |
| Veritaseum LLC Citi 2142 | $285,858.47 |  | $3,984,600.84 | $4,270,459.31 |
| Grand Total | $314,156.56 | $215,580.62 | $6,135,184.90 | $6,664,922.08 |

The total amount of deposits from all the assumed cryptocurrency platforms, for the period from April 1, 2017 to July 31, 2019, was $6,664,922.08.

12. I was asked to identify all deposits over $1,500 during the Relevant Period into the accounts maintained in the name of Veritaseum LLC and Veritaseum, Inc. (the "Veritaseum Accounts"), **except**: 1) deposits that appeared to be from the apparent cryptocurrency platforms described in paragraphs 7 to 11 above; 2) deposits that appeared to be transfers from other Accounts; or 3) deposits for which the relevant bank statement indicated that the transaction was a "return" or "reversal" of a previous transaction. Attached as Exhibit 22 is a list of all deposits I identified using these criteria. The accounts included in this analysis were the Veritaseum LLC Citibank account 2142, the Veritaseum LLC Chase account 5610, and the Veritaseum Inc.

4

account 4865. These are the accounts of Veritaseum LLC and Veritaseum, Inc. that I identified in Exhibit 21 as having received deposits from likely cryptocurrency sources that existed on April 1, 2017, as well as an account to which I observed that the Veritaseum LLC Citibank 2142 account regularly transferred funds.

13. As reflected in Exhibit 22, the relevant accounts received a total of eight deposits during the Relevant Period that met the criteria set forth in paragraph 12 from Veritaseum LLC. One of these was the deposit, previously identified in my August 12 Declaration, from Lorna Mae Johnson Revocable Trust in the amount of $1,000,000. There were six additional deposits that appeared to be wire transfers from individuals, with a total amount of $225,900; two of the deposits were from Patryk Dworznik who, as discussed below, received funds from Veritaseum as well. Finally, there was a deposit of $30,000 from Covington & Burling LLP, by check with the memo: "To Reggie Middleton Super PAC c/o Veritaseum." A copy of this check is attached as Exhibit 23.

14. Separately, I was asked to identify all deposits over $1,500 during the Relevant Period into the Veritaseum Assets LLC account 1786, **except**: 1) deposits that appeared to be from the apparent cryptocurrency platforms described in paragraphs 7 to 11 above; 2) deposits that appeared to be transfers from other Accounts; or 3) deposits for which the relevant bank statement indicated that the transaction was a "return" or "reversal" of a previous transaction. The Veritaseum Assets LLC account received five deposits meeting the criteria, from three depositors, with a total amount of $348,524.20. Attached as Exhibit 24 is a list of all deposits I identified using these criteria.

### Commingling of Assets Between Business and Personal Accounts

15. I was also asked to identify all transfers from any of the Accounts maintained in the names of entities to other Accounts in the name of Defendant Middleton, and vice versa.

Attached as Exhibit 25 is a chart of all such transfers. In preparing this chart, I had to make certain assumptions because of incomplete documentation provided by the bank. Specifically, the entity accounts maintained at Citibank, for which I had documentation through July 31, 2019, occasionally showed a "transfer to checking" without providing any details about the account that received the transfer. Because the Commission has not yet received statements for Middleton's personal account at Citibank for the period June 2018 through July 2019 from Citibank, I was unable to verify that the transfers were to his personal account. I did, however, review the records for the entity accounts maintained at Citibank, and I confirmed that none of these transfers were sent to any of the entity accounts. Accordingly, I assumed that the transfers to checking were transfers to Middleton's personal account, Citibank 1630.

16. As reflected in the chart in Exhibit 25, during the Relevant Period, Middleton received 50 transfers from the entity accounts, with a total amount of $1,835,358.25. Middleton also sent transfers to the entity accounts. During the Relevant Period, he sent 14 transfers with a total amount of $121,207.00. After deducting the amounts he sent back to the entities, Middleton received $1,714,151.25 from the entity accounts.

17. In order to analyze which accounts were receiving funds from which accounts, I used a feature in Excel called the PivotTable. Based on the chart in Exhibit 25, I created a PivotTable that shows the sum of the transactions from and to each account. I then created subtotals of transfers from the Middleton accounts to the entity accounts, and from the entity accounts to the Middleton accounts. The chart is attached as Exhibit 26.

### Payments to Certain Payees

18. Because I had very limited time to prepare my August 12 Declaration for purposes of an emergency filing, I made two errors in calculating or describing certain total figures in my August 12 Declaration.

6

19. In paragraph 30 of my August 12 Declaration, I mistakenly stated that the payments I had observed from the Veritaseum LLC Chase 5610 account to international recipients, during the time period from June 5, 2018 through July 12, 2019, totaled $269,626.97. The underlying records for the account were attached to my August 12 Declaration as Exhibits 1, 11 and 17. In fact, the correct total, for the time period I had reviewed at the time of my declaration, was $371,764.47.

20. Also in paragraph 30 of my August 12 Declaration, I stated that I had observed international wire transfers from the Veritaseum LLC Citibank 2142 account to unknown parties (that is, parties whose identities were not reflected in the documentation provided to the Commission by the bank) in the amount of $477,845. The calculation included the time period from May 26, 2018 through July 31, 2019, for which account statements and other documentation had been produced a few days before August 12. I calculated the total by using the "sum" feature on data provided by the bank in an Excel spreadsheet that appeared to include all relevant international wires.

21. After August 12, 2019, upon closer inspection, I observed that the spreadsheet did not include three wire transfers that had occurred in May 2018 and are reflected on the account statements for that time period, which were attached to my August 12 Declaration as Exhibit 18. Because I based my calculation of the total on the spreadsheet, without factoring in the three additional transactions shown on the statements, the total was incomplete. I have updated my calculation of the total amount of wire transfers to unknown parties from May 26, 2018 through July 31, 2019, to include the previously omitted wire transfers. Attached as Exhibit 27 is a chart reflecting the dates and amounts of the international wire transfers to unknown recipients that I

7

observed in the Citibank 2142 account. As reflected in the chart, the total amount of wires to unknown parties during that period was $523,914.

22. The analysis in my August 12 Declaration was based on preliminary charts prepared within days of certain bank records being received by the Commission. Since August 12, 2019, I have had the opportunity to complete my charts and to conduct a more detailed analysis. In addition, the Commission received additional bank records shortly before and after August 12 that I either did not have, or had not had time to analyze fully, when I submitted the August 12 Declaration.

23. In my August 12 Declaration, I had observed payments from the Veritaseum LLC Citibank account 2142 to Dillon Gage from May 26, 2018 through April 25, 2019, totaling $610,589.93. According to its website, dillongage.com, Dillon Gage is "one of the largest metals trading firms in the world." I have been asked to update my chart of payments to Dillon Gage to reflect all payments made from April 1, 2017 through July 31, 2019, including those that were not reflected in my August 12 Declaration because they are reflected in bank records the Commission received after August 12. The first payment to Dillon Gage occurred on June 22, 2018. The total amount of payments made, from April 1, 2017 through July 31, 2019, is $1,410,788.43. The updated chart is attached as Exhibit 28.

24. I was asked to prepare a chart listing payments to recipients who, based on statement details, backup documentation, payee names and/or internet research, appear to be based outside the United States. A chart of the transfers is attached as Exhibit 29.

25. In many cases, the transfers were identified on bank account statements as "international wire," in which case I assumed the recipient was located outside the United States. In some cases, the bank statement or wire transfer instructions contained information identifying

the location of the receiving bank as outside the United States, in which case I assumed that the ultimate recipient of the funds was located in the same country. In some cases, the location of the entity was unclear from the bank account statement, and the statement indicated "ACH payment," "Internet Check Card," or "Online Transfer," rather than "International Wire." If those transactions went to a payee who had received other transfers marked as "International Wire," I assumed that the recipient of the non-wire transfer was based outside the United States. In addition, if a foreign country was mentioned in the payee name, I assumed the payee was located outside the United States. In some cases, I conducted an internet search to find the location of the recipient. In my internet research, I found that Andela, according to Wikipedia, is an African company that "launched operations in Nigeria in 2014." Although the entity's headquarters appear to be located in New York, I assumed that wires to Andela were directed to the entity's accounts in Nigeria.

26. The chart of likely international transfers includes a number of transfers for which the recipient was not clearly identified, but the receiving bank, a certain bank in Poland, was identified. A number of other transfers, which went to the same bank in the same city in Poland, specified that the recipient was Pragmatic Coders. I assumed that the transfers for which the recipient was unspecified, but the bank was identified as the same bank to which the Pragmatic Coders transfers were sent, went to Pragmatic Coders, and I identified them as such in Exhibit 29. In the case of payments to Manish Kapoor and/or FA Fin Advisors, my internet research indicated that the entity was founded by the individual, so I assumed they were the same payee. Similarly, I assumed that payments to Patryk Dworznik went to the same payee as payments to "D-Soft Patryk Dworznik."

27.     In the case of Patryk Dworznik, in addition to almost $100,000 of transfers to the recipient, there were two transfers of $25,230 each from the same recipient to Veritaseum LLC. Because the transfers from Dworznik to Veritaseum LLC did not indicate that they were a return of money previously paid, I did not deduct them from the total paid to Dworznik. (These deposits, however, are reflected on Exhibit 22, the schedule of certain deposits into the Accounts.)

28.     Based on my chart of likely international payments, it appears that, from April 1, 2017 through July 31, 2019, the accounts have paid approximately $937,220.76 to entities and individuals located outside the United States during the Relevant Period.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 22, 2019, New York, New York.

*Roseann Daniello*
Roseann Daniello