# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | 19 Civ. 04625 (WFK) (VMS) |
| -against- | ) ) ) | |
| REGINALD ("REGGIE") MIDDLETON, VERITASEUM, INC., and VERITASEUM, LLC, | ) ) ) ) | |
| Defendants. | ) | |

### BRIEF OF *AMICUS CURIAE* OF VERIDAO
### IN SUPPORT OF DEFENDANTS' FRCP 60(D)3
### MOTION TO VACATE ORDER FOR FRAUD UPON THE COURT

**KENNYHERTZ PERRY, LLC**

*/s/ Seth C. McCauley*
Seth C. McCauley (admitted pro hac vice)
Kennyhertz Perry, LLC
2000 Shawnee Mission Parkway, Ste. 210
Mission Woods, KS 66205
Phone: 816-527-9447
Fax: 855-844-2914
seth.mccauley@kennyhertzperry.com

*Attorneys for VeriDAO*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................................ iii

    I.    CORPORATE DISCLOSURE STATEMENT ................................................................. 1

    II.    IDENTITY AND INTERESTS OF THE *AMICUS CURIAE* ........................................... 1

    III.    FACTUAL BACKGROUND ........................................................................................... 4

    IV.    ARGUMENT ..................................................................................................................... 4

        A.    An Attorney's Failure to Prevent Fabricated Evidence from Being Offered to the Court Empowers that Court, as a Victim of Such Fraud, to Set Aside a Judgment Obtained as a Result........................................................................................................................... ……..4

        B.    Evidence of Fraud is Fraud Upon the Court When Such Fraud Creates an Unconscionable Scheme Designed to Improperly Influence the Court in its Decision……..8

        C.    There is a Clear Need for an Evidentiary Hearing to Evaluate Whether Fraudulent Evidence Submitted by the SEC Amounts to an Unconscionable Scheme Designed to Improperly Influence the Court. .............................................................................................. 11

    V.    CONCLUSION ................................................................................................................. 4

## **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. Robertson*
    882 F.2d 421 (9th Cir.1989) …………………………………………………...5

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*
    322 U.S. 238 (1944) …………………………………………….......4, 6, 9, 11, 12, 13

*In re Intermagnetics America, Inc.*
    926 F.2d 912 (9th Cir.1991)……………………………………………………….5

*In re Levander*
    180 F.3d 1114 (9th Cir. 1999)…………………………..............…………………9

*Pumphrey v. K.W. Thompson Tool Co.*
    62 F.3d 1128 (9th Cir. 1995)……………………………….....…5, 6, 7, 12, 13

*United States v. Beggerly*
    524 U.S. 38 (1998)……………………………………………………….....9, 13

*United States v. Sierra Pacific Industries, Inc.*
    862 F.3d 1157 (9th Cir. 2017)……………………………….....7, 8, 9, 10, 11, 12, 13

On June 12, 2025, Seth C. McCauley, counsel for VeriDAO sent correspondence to counsel of record, notifying the Parties of VeriDAO's intention to file an *amicus curiae* brief in support of Defendants' FRCP 60(D)(3) Motion to Vacate Order for Fraud Upon the Court. *See* **Exhibit A**, Declaration of Seth C. McCauley ("McCauley Decl.") at ¶¶ 4, 8. On June 12, 2025, Jason Siebert, counsel for Defendants, responded to Mr. McCauley's correspondence and notified that Defendants do not object to VeriDAO filing an *amicus curiae* brief in this matter. McCauley *Id.* at ¶¶ 6, 8. On June 17, 2025, Ben Kuruvilla, counsel for the Securities and Exchange Commission (the "**SEC**"), responded to Mr. McCauley's correspondence and advised that the SEC does not object to VeriDAO filing an *amicus brief* in this matter. *Id.* at ¶¶ 7-8.

In light of the Parties' lack of objection, VeriDAO respectfully submits this *amicus curiae* brief in support of the Motion to Vacate Order for Fraud Upon the Court (Doc. 118) filed by Defendants Reginald "Reggie" Middleton, Veritaseum, Inc., and Veritaseum, LLC (collectively "**Veritaseum**").

## I. CORPORATE DISCLOSURE STATEMENT

VeriDAO has no parent corporation, and no publicly held corporation owns 10% or more of VeriDAO. This disclosure is made voluntarily to aid the Court in evaluating any potential conflicts of interest.

## II. IDENTITY OF VERIDAO AND INTERESTS OF THE *AMICUS CURIAE*

VeriDAO is an unincorporated, decentralized autonomous organization composed of individuals and entities who hold Veritaseum digital assets (collectively, "**VERI Tokens**"). *See* Declaration of Michael Biethman ("Biethman Decl."), copy attached as **Exhibit B**, at ¶ 2. As a result of the SEC obtaining the Temporary Restraining Order referenced in Defendants' memorandum, and the corresponding asset freeze, all Veritaseum assets and Veritaseum

1

platforms were functionally shut down. Biethman. Decl., Ex. B, at ¶¶ 4-5.

As a result of the asset freeze, VeriDAO members could no longer redeem, rent, or transact with the VERI Tokens, rendering them functionally useless and stripping them of any utility. Biethman. Decl., Ex. B, at ¶ 5. While this matter ultimately resulted in a consent judgment, the SEC's settlement with Defendants in this matter did not adjudicate whether VERI Tokens were securities. Biethman. Decl., Ex. B, at ¶ 6. Nevertheless, as a byproduct of the settlement, the SEC confiscated approximately 98 million VERI Tokens and permanently enjoined the Defendants from supporting the platform. *Id*. The above actions led to an immediate collapse in both the VERI Token's value and the ecosystem's viability. Biethman. Decl., Ex. B, at ¶ 7. VeriDAO members were left without legal clarity, technical support, or use-case pathways. *Id*.

In 2021, a collective of affected VERI Token holders, including VeriDAO members, sought to regain access to the tools and utilities that had been lost. Biethman. Decl., Ex. B, at ¶ 8. VeriDAO's first act was to pool funds and file a formal No-Action Letter with the SEC, requesting guidance on whether VeriDAO members could use, rent, or trade their VERI Tokens. *Id*. The SEC denied VeriDAO's filing and advised there would be no written decision provided. Biethman. Decl., Ex. B, at ¶ 9. At the time, the SEC said in no uncertain terms, that VERI Token holders could not sell or otherwise deal with transfer or dispose of our VERI Tokens, and referred to the same as "fraudulent." *Id*.

VeriDAO exists exclusively as an unincorporated association with the sole goal of representing the community of VERI Token holders injured as a result of the above-described actions and the SEC's asset freeze. *Id*. The value of VERI Tokens has dropped significantly following the August 12, 2019 asset freeze, which has effectively resulted in a total loss of any Veritaseum Platform utility for VERI Token holders. Biethman. Decl., Ex. B, at ¶ 11.

2

VeriDAO is aware of over 100 unique victim impact statements detailing losses and disillusionment experienced by VERI Token holders as a result of this case. Biethman. Decl., Ex. B, at ¶ 12. These include sudden devaluation, locked assets, and inability to use or sell what had been lawfully purchased. *Id*. Further, the SEC's labelling of the VERI Token project as "fraudulent" without affording VERI Token holders a voice caused reputational harm to VeriDAO members who supported Defendants publicly. Biethman. Decl., Ex. B, at ¶ 13. VeriDAO members have experienced lost business collaborations and have lost ongoing discussions with various business firms, which were terminated due to uncertainty over the legal status of VERI Tokens and the reputational damage caused to Defendants. *Id*.

Due to the final judgment in this case, in large part as a result of the asset freeze, VeriDAO members remain without definitive direction as to regulatory questions that must be answered and resolved in order to establish the value of our interest in VERI Tokens. Biethman. Decl., Ex. B, at ¶ 14. In the event the Court grants Defendants' motion to vacate the judgment in this case (Doc. 61) in light of the SEC's alleged fraudulent misrepresentations, VeriDAO members will be directly and immediately impacted. Biethman. Decl., Ex. B, at ¶ 15. Further, VeriDAO members have a direct interest in the outcome of this matter, and as such seek to participate in the Court's consideration of the Defendants' present motion in order to be given a voice to the Court as to the impact of the SEC's actions as alleged in Defendants' motion. Biethman. Decl., Ex. B, at ¶ 16.

Given VeriDAO's interest in the outcome of this matter, and its direct impact on the VeriDAO members' interests in VERI Token, the members of VeriDAO respectfully request that the Court consider the arguments presented in VeriDAO's *amicus curiae* brief and consider affording the opportunity for evidentiary hearing to be held to meaningfully evaluate the substance of claims asserted in Defendants' RCP 60(D)(3) Motion to Vacate Order for Fraud Upon the Court.

3

Biethman. Decl. at ¶ 17.

## III. FACTUAL BACKGROUND

VeriDAO incorporates by reference and relies on the factual background asserted by Defendants in their memorandum in support of the Motion to Vacate Order for Fraud Upon the Court (Doc. 643).

## IV. ARGUMENT

This matter involves two key areas of great concern:

(1) The Temporary Restraining Order and corresponding asset freeze were procured on the basis of fabricated testimonial evidence offered by the SEC at the TRO hearing; and

(2) The SEC's fraudulent representations offered in furtherance of the obtained TRO ultimately harmed the Court and the judicial process as a result of the Court's justifiable reliance on the SEC on that fraudulent evidence.

VeriDAO endorses and agrees with the arguments made by Defendants in their Motion to Vacate Order for Fraud Upon the Court. The case record, particularly through the lens of Doc. Entries 1-9 and the transcript of the Temporary Restraining Order hearing, is clear on its face that fraudulent evidence was provided by the SEC in this matter. The only question for the Court is how to proceed from here. VeriDAO now offers an expanded view of relevant prior case law to assist the Court in its path forward and to illustrate why, at a minimum, limited discovery and an evidentiary hearing are required.

### A. An Attorney's Failure to Prevent Fabricated Evidence from Being Offered to the Court Empowers that Court, as a Victim of Such Fraud, to Set Aside a Judgment Obtained as a Result.

While there appear to be limited similar instances in the Second Circuit, there are two relevant Ninth Circuit holdings that, in conjunction with relevant principles outlined in *Hazel-Atlas*, should be considered by the Court when ruling on Defendants' motion. These cases highlight how courts have analyzed previous FRCP 60(d)(3) motions to vacate due to fraud upon

4

the Court. When considering these holdings in conjunction with the SEC's heightened duty of candor to the Court, it is clear that the Court – at a minimum – should conduct an evidentiary hearing and limited discovery to determine what the SEC knew at the relevant times noted in Defendants' memorandum in support of its motion.

The first of those cases is *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995). The *Pumphrey* case stemmed from a man who was killed when he dropped a handgun and the gun fired as a result. *Pumphrey* at 1130. Plaintiffs brought an independent action to set aside a defense verdict in the products liability action on the grounds of fraud upon the court in relation to the defendant handgun manufacturer's presentation of videotaped product tests. *Id*. Upon review, the Ninth Circuit found that fraud upon the court had in fact occurred.

At trial in the underlying products liability action, the defendant presented a videotape showing a defendant-manufactured handgun being dropped from various heights to illustrate that the gun was not defective and could not have misfired when dropped by the decedent. *Id*. However, it was later discovered that, in a preceding unrelated lawsuit alleging the same defect, the defendant manufacturer had produced a second video, which was recorded on the same day as the video presented at trial, which showed the handgun in question firing when being dropped during testing. *Pumphrey*, *id.* at 1130. This entire original video was not produced to the *Pumphrey* plaintiff during discovery but rather was altered to omit the portion of the video in which the gun misfired. *Id*. As a result, the district court granted summary judgment in favor of the plaintiff and vacated the judgment on the grounds that the defendant's general counsel, who was actively involved in both cases, was an officer of the court and committed fraud upon that court by allowing an altered video to be presented at trial. *Id*.

On appeal, the Ninth Circuit noted that a judgment may be set aside for fraud upon the

5

court when an officer of the court perpetrates fraud affecting the ability of the court or jury to impartially judge a case. *Pumphrey*, *id.* at 1130 (citing *In re Intermagnetics America, Inc.*, 926 F.2d 912, 916 (9th Cir.1991); *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir.1989)). The court further noted that the defendant's general counsel was actively involved in both product liability cases, gathering information to respond to discovery requests and framing the answers, and participating in the videotaping of both the trial video and the original video. *Id*. Further, defendant's general counsel, who was present at trial, did nothing to correct the record or prevent the admission of the doctored video when the court specifically inquired as to whether any attempt had been made to alter or modify the video and whether the video accurately and fairly portrayed the tests conducted. *Id*. at 1132. The Ninth Circuit in *Pumphrey* noted that the general counsel's actions amounted to a scheme to present fraudulent evidence in pursuit of improperly influencing the court, resulting in fraud upon the court. *Id*.

On appeal, the defendant argued that the plaintiff could have uncovered the fraudulent representation because defendant's revised discovery responses admitted the gun misfired during a drop test a month before trial. *Pumphrey* at 1133. The Ninth Circuit rejected this argument, noting that defendant had successfully obtained a protective order that precluded a deposition of the gun testing expert after the drop-test occurred, but before the results were revealed to plaintiff. *Id*. That protective order made it clear that the only remaining way to discover the recorded misfire during testing was through defendant's amended answers to discovery on the eve of trial.

The Ninth Circuit further noted that even if plaintiff had not been diligent in uncovering the fraud, the court was still empowered to set aside the verdict *when the court itself was a victim of the fraud*. *Id.* (emphasis added). In support, the Ninth Circuit quoted the United States Supreme Court in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*:

6

> [E]ven if Hazel did not exercise the highest degree of diligence [the] fraud *cannot be condoned for that reason alone*. This matter does not concern only private parties.... [and] tampering with the administration of justice in the manner indisputably shown here involves far more than injury to a single litigant. ***It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of the litigants.*** The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. at 246, 64 S.Ct. at 1001 (emphasis added).

The *Pumphrey* case highlights key points relevant to the present matter. The first is that any officer of the court, actively involved in a case, who fails to correct or prevent fabricated evidence presented to the court acts in furtherance of a scheme to improperly influence that court, and thereby commits fraud upon that court. The second key point is that even if a party could have diligently uncovered fraud upon the court prior to a judgment in a matter, the failure to discover such fraud does not preclude the court from setting aside that judgment when the court itself was a victim of that fraud.

### B. Evidence of Fraud is Fraud Upon the Court When Such Fraud Creates an Unconscionable Scheme Designed to Improperly Influence the Court in its Decision.

The result in *Pumphrey* appears to be in contrast to the holding in another key Ninth Circuit case, *United States v. Sierra Pacific Industries, Inc.*, 862 F.3d 1157 (9th Cir. 2017). While the results in *Pumphrey* and *Sierra* differ, both cases provide a clear roadmap for the standard of evaluating when fraudulently offered evidence rises to impermissible influence and therefore fraud upon the Court.

In *Sierra*, the United States brought an action against property owners and a logging company to recover damages from a forest fire allegedly started by the logging company. *Sierra*

7

at 1163. The parties engaged in extensive discovery and motion practice over the course of three years. During that time, the government produced a number of documents that led the defendants to believe the government had engaged in fraud during and after its investigation of the origin of the fire, in an attempt to blame the fire on the defendant logging company. *Id*. at 1164. In response, the government filed a motion *in limine* to exclude much of the evidence supporting the defendants' theories of fraud and concealment, which was granted by the district court in part. *Id*. The district court's final pre-trial order precluded defendants from offering evidence to show conspiracy but permitted defendants to offer evidence that there was an attempt to conceal information. *Id*.

Just before trial, the parties reached a settlement agreement, which notably included the provision below:

> *The Parties understand and acknowledge that the facts and/or potential claims with respect to liability or damages regarding the above-captioned actions may be different from facts now believed to be true or claims now believed to be available ("Unknown Claims").* Each Party accepts and assumes the risks of such possible differences in facts and potential claims and agrees that this Settlement Agreement shall remain effective notwithstanding any such differences.... Accordingly, this Settlement Agreement, and the releases contained herein, shall remain in full force as a complete release of Unknown Claims notwithstanding the discovery or existence of additional or different claims or facts before or after the date of this Settlement Agreement.

*Sierra*, *id.* at 1165. (emphasis added). Following the settlement, the district court entered judgment dismissing the case with prejudice at the parties' request. *Id*.

After the case was dismissed, several other instances of alleged misrepresentation and fraud surfaced. *Id.* at 1165. As a result, the defendants filed a motion for relief from judgment under FRCP 60(d)(3), asserting the government engaged in four separate instances of alleged misrepresentations amounted to fraud upon the court. *Id*. Specifically, defendants pointed to (1) government-encouraged false testimony provided by government witnesses regarding the fire's

8

origin; (2) the government's failure to disclose a proven false accusation that defendant's counsel had offered a bribe to a government employee in exchange for saying he started the fire; (3) the government's misrepresentation that funds recovered in the settlement would be placed in the state treasury, when in fact some funds went to a fund that enriched fire department officials; and (4) the court's failure to consider the totality of the government's conduct, amounting to a "trail of fraud." *Id*. at 1170-1173.

On review, the Ninth Circuit emphasized at the outset of its analysis that "not all fraud is fraud on the court." *Sierra*, *id.* at 1167 (citing *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999) The court further noted that relief from judgment for fraud on the court is available only to prevent a grave miscarriage of justice and that the relevant inquiry for claims of fraud upon the court is not whether the alleged fraud prejudiced the opposing party, but whether it harmed the integrity of the judicial process. *Id*. (citing *United States v. Beggerly*, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998); *Hazel-Atlas*, *supra*, at 244). Lastly, the court reiterated from its prior holdings that the court would only be able to grant relief where the alleged fraud upon the court involved "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id*. at 1168 (citing *Pumphrey, supra*, at 1131). In reliance on these preestablished principles, the Ninth Circuit found that the district court had correctly declined to find fraud upon the court in regard to all four instances of defendants' offered examples of the government's alleged fraud. *Id.* at 1170-73.

As to defendants' first example of fraud (that the government had encouraged its witnesses to falsely testify as to the investigation of the fire's origin), the Ninth Circuit found that the language used by the government was not an instruction to commit perjury, but rather an opinion about the relative importance of an element of the case. *Sierra, id.* at 1170-1171. This

9

difference in opinion did not amount to a fraud upon the court because it did not significantly change the picture presented to the court and did not demonstrate that any grave miscarriage of justice occurred. *Id*. As to the defendants' second example of fraud (that the government failed to disclose a proven false accusation that defendant's counsel had offered a bribe to a government employee in exchange for false testimony), the court once again found that this example again did not significantly change the story and substantive facts presented to the court. *Id*. at 1171-72. This is because the court found the government did not have a specific duty to disclose false bribe information, beyond its standard discovery obligations. *Id*.

The defendant's third allegation of fraud upon the court was that the government misrepresented to the court that funds recovered in the settlement would be placed in the state treasury, when in fact some funds went to a fund that enriched fire department officials. *Sierra*, id. at 1172-73. The court once again found this example did not meet the requisite threshold to find fraud upon the court. *Id*. at 1173. The court's rationale was largely based on an admission by the defendants that they had no evidence the government knew of the improper nature of the fund and ultimately the government did not have a duty to disclose documents that it did not possess. *Id*.

Lastly, the court declined to find fraud on the court existed as to the defendant's fourth example of fraud, an argument that the totality of the examples of fraud amounted to fraud in the aggregate. *Sierra*, *id*. at 1173. Again, the court highlighted that the examples provided either did not significantly change the story and substantive facts presented to the court or did not illustrate any instance in which the government was in possession of substantive evidence that it had a duty to report to the court. *Id*. In light of the court's unanimous rejection of all alleged examples of fraud, the court declined to find that any fraud upon the court had occurred and affirmed the lower

court's ruling in denying defendant's motion to vacate the underlying settlement and judgment. *Id.* at 1176.

While a notably different result from the *Pumphrey* case, the *Sierra* demonstrates that evidence of fraudulent conduct must clearly alter the story presented to the court and be relied upon in issuing a substantive ruling. Further, the inquiry in analyzing the effect of alleged fraudulent evidence is not whether such evidence prejudiced the opposing party, but whether it harmed the integrity of the judicial process and the court itself.

### C. There is a Clear Need for an Evidentiary Hearing to Evaluate Fraudulent Evidence Submitted by the SEC that Amounted to an Unconscionable Scheme Designed to Improperly Influence the Court.

The holdings in *Pumphrey* and *Sierra*, in conjunction with the principles established in *Hazel-Atlas*, establish that requisite facts exist in the record in this case to warrant further investigation into whether fabricated evidence offered by the SEC was utilized as a mechanism to materially mislead the Court and thereby commit fraud upon the Court. As noted in the Defendants' memorandum, the SEC submitted testimony to this Court that ultimately served as fabricated evidence, which directly influenced this Court's decision in awarding the SEC the ability to freeze Defendants' assets. This decision ultimately crippled Defendants' ability to function, which thereafter damaged the VeriDAO members' interests in the VERI Tokens they possessed.

As alleged, the SEC sought a Temporary Restraining Order in this matter, which sought an asset freeze of Defendants' business and personal financial accounts. Officers of the court - acting on behalf of the SEC - made several fraudulent misrepresentations via their own testimony to this Court that was used in obtaining that asset freeze. As noted by Defendants, counsel for the SEC represented to the Court at that hearing through testimony and records that Mr. Middleton's July 30-31, 2019 transfers, in part, to the Kraken Account represented a dissipation risk following

11

the SEC's issued Wells notice on July 26, 2019. (*See* Seibert Declaration, Exhibit 9 to Doc. 118, TRO Hearing Transcript (hereinafter 'Transcript'), p. 10, lines 15-25). In particular, this representation was offered for the purpose of showing the Court that an asset freeze of Defendants' personal accounts was warranted due to the Kraken Account transfer, which the SEC initially represented as personal account of Mr. Middleton. Notwithstanding the SEC's representations and contentions, Defendants' counsel, countered that these alleged transfers were routine, occurring every six months for eighteen months and disclosed during a two-year SEC investigation (Transcript p. 11, lines 8-17).

When the Court ultimately declined to award an asset freeze of Defendants' personal accounts, the risk of dissipation *should* have been resolved. However, when the Court asked counsel for the SEC *directly* about the Kraken Account, it appears that counsel for the SEC did nothing to correct the record as to the characterization of the Kraken Account. Ultimately, a result of the asset freeze, which was awarded on the basis of fraudulent evidence by way of the SEC's own testimony, declarations in support and documents in support, the Defendants were crippled into having no viable option but to enter into a consent judgment, which thereby irreparably harmed the VeriDAO members as described above.

The holdings in *Pumphrey* and *Sierra*, in conjunction with the principles established in *Hazel-Atlas*, establish that the fraudulent evidence in the record in this case create genuine concern as to the SEC's fraud upon the Court. As such, limited discovery and an evidentiary hearing in this matter are warranted. Just as was the case in *Pumphrey*, there exists here a legitimate instance of a scheme to produce fraudulent evidence offered to this Court, which served as the basis to improperly influence the Court in its decision to grant the Temporary Restraining Order, which created a litany of downstream damaging affects to the Defendants and VeriDAO

members. See *Pumphrey*, *supra*, at 1130-1132. Further, as officers of the court, counsel for the SEC had a duty to correct the record and advise the Court that they had incorrectly characterized the Kraken Account in their testimony and evidence provided, but repeatedly refused to do so. *Id*. Ultimately, as discovered in *Pumphrey*, the Court is empowered in this case to allow for limited discovery and hold an evidentiary hearing in this matter because the fraudulent misrepresentations made in this case were utilized to obtain a ruling from this Court in regard to the Temporary Restraining Order, and therefore **the Court itself was a victim of the fraud**. *Pumphrey*, *supra*, at 1133; *see also Hazel-Atlas*, *supra*, at 246.

In contrast, it is clear that the facts in this case are distinct from the issues presented in *Sierra*. In *Sierra*, the court found that the examples of "fraud" provided either did not significantly change the story and substantive facts presented to the court or did not illustrate any instance in which the government was in possession of substantive evidence that it had a duty to report to the court. *Sierra, supra,* at 1170-1173. In this case, it is clear that the examples of fraudulent evidence within the record significantly altered the story presented to this Court and the SEC had a duty to correct the inaccuracies in such information provided. As a result, the SEC's misrepresentations appear to have harmed the integrity of the judicial process by virtue of violating the SEC's duty of candor. The SEC's improper influence has plainly resulted in fraud upon on the Court, as evidenced by the Court's decision to grant the Motion for Temporary Restraining Order based on the Court's reliance on the SEC. *Id*. (citing *United States v. Beggerly*, supra, at 47; *Hazel-Atlas*, *supra*, at 244).  That must be corrected.

Again, the facts presented in the record raise significant concerns about the presence of fraudulent evidence provided by the SEC and how those representations harmed the judicial process and the Court's basis for its decision making in this matter. The record's instances of

13

fraudulent representations greatly concern VeriDAO, who has already been harmed as a result and maintains a direct interest in the outcome of the Court's ruling on this matter. In light of the above analysis, this Court is endowed with the power to allow for limited discovery to be conducted in regard to these potentially fraudulent representations and hold an evidentiary hearing in this matter to evaluate the same.

## V.  CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to vacate the Final Judgment entered on October 31, 2019 (Doc. 61) due to fraud upon the Court, or, at the very least, allow for an evidentiary hearing with limited discovery in furtherance of ruling on the same.

Respectfully submitted,                    **KENNYHERTZ PERRY, LLC**

*/s/ Seth C. McCauley*
Seth C. McCauley (admitted pro hac vice)
Kennyhertz Perry, LLC
2000 Shawnee Mission Parkway, Ste. 210
Mission Woods, KS 66205
Phone: 816-527-9447
Fax: 855-844-2914
seth.mccauley@kennyhertzperry.com

***Attorney for VeriDAO***

**Local Rule 7.1 Word Count Certification**

In accordance with Local Civil Rule 7.1, I hereby certify that this brief complies with this Court's word count limitations and is substantively 4,414 words in length.

*/s/ Seth C. McCauley*

14