UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                    **Plaintiff,**

         **v.**

REGINALD ("REGGIE") MIDDLETON,
VERITASEUM, INC., and VERITASEUM,
LLC,

                    **Defendants.**

19 Civ. 4625 (WFK) (VMS)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE FINAL JUDGMENT

<br>

Ben Kuruvilla
J. Emmett Murphy
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
100 Pearl Street, Suite 20-100
New York, New York 10004
212-336-5599

June 20, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................2

LEGAL STANDARD...................................................................................................................5

ARGUMENT ...............................................................................................................................6

    I.       DEFENDANTS HAVE NOT MET THE "EXTREMELY HIGH" STANDARD FOR PROVING "FRAUD ON THE COURT" UNDER RULE 60(d)(3) ............................6

        A.  Allegations of Fraud Regarding the Kraken Account and Business Purpose of Certain Large Transfers Are Meritless and Insufficient on Their Face....................7

        B.  Defendants' Additional Misconduct Allegations Similarly Fail ...........................10

CONCLUSION ........................................................................................................................13

# TABLE OF AUTHORITIES

***Cases***

*Anderson v. New York*, No. 07 CIV. 9599 SAS, 2012 WL 4513410 (S.D.N.Y. Oct. 2, 2012) ....6, 8, 11

*Andrulonis v. United States*, 26 F.3d 1224 (2d Cir. 1994) ...............................................................5

*Aneja v. M.A. Angeliades, Inc.*, No. 05-CV-9678, 2010 WL 199681 (S.D.N.Y. Jan. 12, 2010) ......5

*Azkour v. Little Rest Twelve*, No. 10-CV-4132, 2017 WL 1609125 (S.D.N.Y. Apr. 28, 2017)........5

*E. End Eruv Ass'n, Inc. v. The Vill. of Westhampton Beach*,
   No. CV 11-213 AKT, 2015 WL 5774981 (E.D.N.Y. Sept. 30, 2015) .......................................10

*Giurca v. Montefiore Health Sys., Inc.*,
   No. 18-CV-11505, 2023 WL 9102694 (S.D.N.Y. Dec. 21, 2023).........................................8, 9

*Giurca v. Montefiore Health Sys., Inc.*,
   No. 18-CV-11505, 2024 WL 1193574 (S.D.N.Y. Mar. 20, 2024).......................................9, 11

*Gleason v. Jandrucko*, 860 F.2d 556 (2d Cir. 1988) .......................................................1, 6, 10, 12

*Hazel-Atlas*, 322 U.S. at 244, 64 S.Ct. 997................................................................................1, 11

*In re Old Carco LLC*,
   423 B.R. 40 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 10 CIV.2493 (AKH), 2010 WL 3566908
   (S.D.N.Y. Sept. 14, 2010)...........................................................................................................8

*King v. First Am. Investigations, Inc.*, 287 F.3d 91 (2d Cir. 2002) .............................................6, 12

*Marco Destin, Inc. v. Levy*, 2023 WL 5530364 (S.D.N.Y. Aug. 28, 2023)......................................9

*Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir. 2011) ..........................................8

*Philips Lighting Co. v. Schneider*,
   No. 05-CV-4820 SLT MDG, 2014 WL 4274182 (E.D.N.Y. Aug. 28, 2014) .........................5, 6

*Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995) ...........................................10

*SEC v. ESM Government Securities, Inc.*, 645 F.2d 310 (5th Cir. 1981).......................................11

*United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157 (9th Cir. 2017).......................1, 6, 8, 9, 10

*Rules*

Fed. R. Civ. P. 60(b)(3) ........................................................................................................5, 6, 10

Fed. R. Civ. P. 60(d)(3) ..............................................................................................5, 6, 7, 8, 10, 11

Fed. R. Civ. P. 60(c) ...........................................................................................................................5

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to the motion ("Motion" or "Mot.") of Defendants Reginald Middleton ("Middleton"), Veritaseum, Inc., and Veritaseum, LLC (collectively, "Defendants") under Federal Rule of Civil Procedure 60(d)(3) to vacate the Consent Judgment that the Court entered in this case on November 1, 2019 (Dkt. No. 61).

## PRELIMINARY STATEMENT

Nearly six years ago, Defendants voluntarily entered into the Consent Judgment in this case, with the assistance of sophisticated defense counsel. They now seek to vacate that judgment under Federal Rule of Procedure 60(d)(3), alleging that the SEC committed fraud on the Court while seeking a temporary restraining order ("TRO") at the outset of this case.

The SEC rejects Defendants' accusations and submits that the underlying record reveals them to be baseless. But the motion fails as a matter of law even if the accusations are taken as true. It is well settled that "relief for fraud on the court is available only where the fraud was not known at the time of settlement or entry of judgment." *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017) (citing *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238 (1944). Defendants admit they entered into the 2019 Consent Judgment knowing essentially all of the supposedly fraudulent acts of which they now complain. Indeed, Defendants' counsel fully aired the core allegations in briefing and argument well before the Consent Judgment, but they abandoned them on the eve of a scheduled hearing and consented to a preliminary injunction. Rule 60(d)(3) simply provides no relief for complaints about alleged fraud the movants knew about when they decline to litigate the issues and voluntarily choose to settle the action. *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988). The Motion should be denied.

1

**BACKGROUND**

On August 12, 2019, the SEC filed its Complaint alleging that Defendants engaged in securities fraud, market manipulation, and unregistered securities sales, in violation of various federal securities laws.  Dkt. No. 1 (SEC Complaint ("Complaint")) at ¶ 12 (alleging violations of Sections 5(a) and 5(c) and 17(a) of the Securities Act of 1933; and Sections 9(a)(2) and 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder).  Defendants' current motion does not challenge the merits of those claims.

On the same day that it filed its Complaint, the SEC sought a TRO to freeze approximately $8 million of investor proceeds that remained from the approximately $14.8 million that, the SEC alleged, Defendants had fraudulently raised through their sale of the crypto asset "VERI." Dkt. No. 7 (Memorandum in Support of Emergency Application) at 1.   In support of its TRO application, the SEC alleged that Middleton had, among others things: (1) executed large, ongoing transfers of blockchain assets and bank funds (including transfers that occurred shortly after the SEC staff notified Defendants that the staff intended to recommend an enforcement action against Defendants); (2) commingled investor proceeds with his personal funds and used the funds to pay certain personal expenses; and (3) transacted with several international contacts. The SEC alleged that Middleton's actions regarding investor funds raised reasonable concerns about asset dissipation that could have threatened the SEC's ability to collect an eventual judgment.  *See id.* at 2-3, 15-16.

That afternoon, Judge Hall (sitting as Miscellaneous Duty Judge) heard the SEC's TRO application, with counsel for all parties present.  *See* Exhibit 9 to Declaration of Jason Seibert ("Seibert Decl.") (Dkt. No. 120).  Defendants were represented at the hearing by experienced securities enforcement counsel who disputed, among other things, the SEC's characterizations of

2

Defendants' alleged asset transfers and commingling. Defendants' counsel specifically argued that the SEC had failed to provide adequate context to certain large digital asset transfers which, he asserted, were consistent with past legitimate routine transfers used to fund Middleton's ongoing business.  Seibert Ex. 9 at 11.

Judge Hall held that the SEC had met the "fairly low bar" for securing an asset freeze and granted the TRO as to business accounts.  *Id.* at 20-22.  Judge Hall also noted that there appeared to be some uncertainty regarding the distinction between Middleton's personal and business accounts, and that the SEC had alleged that Middleton could freely transfer assets between business and personal accounts.  *Id.* 37-39.  She ordered further briefing on the issues raised at the hearing and made clear any relief she granted would, by definition, be temporary: "Anything that I order today you know would only be in place for a period of up to fourteen days. The parties would then have had an opportunity to brief all of these issues and put forth whatever evidence that you may have before the judge that will ultimately decide the preliminary injunction in this case."  *Id.* at 13.  She also granted Defendants' request for reciprocal expedited discovery from the SEC, and ordered a hearing for ten days later, on August 22, 2019.  Minute Order August 12, 2019.  The following day, Your Honor was assigned to this case for further proceedings and ordered the preliminary injunction hearing to take place on August 26, 2019.

One week later, on August 19, Defendants filed an extensive brief and accompanying declarations opposing the SEC's request for a preliminary injunction and criticizing the SEC's TRO application. Defendants' opposition papers raised the very same objections that form the crux of their current Motion: (1) that the SEC had failed to note for the Court that certain of Defendants' large asset transfers were consistent with transfers they made the previous year (which, Middleton claimed, were "necessary to continue Veritaseum's ongoing lawful business

3

operations"); and (2) that the declaration of SEC accounting expert Patrick Doody (the "First

Doody Declaration"), and the SEC's brief citing that declaration, had made the "false" assertion

that a certain digital asset account ("the Kraken account") belonged to Middleton personally

when, in fact, it belonged to Veritaseum LLC.  Dkt. No. 19 at 14.

The SEC replied on August 22, 2019, reiterating its request for a preliminary injunction,

citing what appeared to be Middleton's transfer of at least $1.7 million to personal accounts, his

purported inability "to provide a complete list of the [blockchain] addresses where he has

transferred Offering proceeds," and his "history of transferring funds abroad."  Dkt. No. 46 at 14-

15.  The SEC accompanied its reply with a second declaration from Doody (the "Second Doody

Declaration"), which provided additional analysis supporting the SEC's request for a preliminary

injunction.  In addition, the Second Doody Declaration expressly corrected the First Doody

Declaration to the extent it mischaracterized the Kraken account as being held in Middleton's

name, noting Middleton's close association with the account:

> In my first declaration, I referred to a certain account at Kraken, a digital asset trading
> platform, in describing the flow of digital assets from the [Initial Coin Offering], as an
> account "held by Middleton" (Doody Decl. I ¶ 24) or as "Middleton's Kraken account"
> (e.g., *id.* at 27). In choosing to describe the account as such, I referred to account opening
> documentation that listed Mr. Middleton as the "Requester" for the account, the sole
> contact for the account, and attempted to use his personal social security number as the
> tax ID for the account. I understand now that the account is titled in the name Veritaseum
> LLC. The titling of the account does not change the tracing analysis that I undertook.

Dkt. No. 43 at ¶ 13.

The Court did not hold a hearing on the SEC's preliminary injunction request and did not

have occasion to address any of these factual disputes. Because on August 25, 2019—the day

before the scheduled hearing on these issues—the parties filed a joint stipulation and proposed

order imposing a preliminary injunction on consent.  The Court entered it the following day.

4

Dkt. No. 51; *see also* Dkt. No. 50 (noting that the joint proposed order would "obviate the need for the hearing currently scheduled for August 26, 2019").

On October 2, 2019, the parties requested an adjournment of a scheduled pre-trial conference "[i] order to permit the parties to devote their resources to settlement." Dkt. No. 58. Shortly thereafter, on October 31, they agreed to settlement terms and filed a motion to approve the Consent Judgement. Dkt. No. 60. In his signed consent to the Consent Judgment—which the Consent Judgment expressly incorporates by reference (the "Consent")—Middleton expressly waived any finding of facts or conclusions of law by the Court, as well as any right to appeal the Consent Judgment. Dkt. No. 60-2 at ¶¶ 5-6. Middleton's Consent further states that he "enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission . . . to induce [him] to enter into this Consent." Dkt. No. 60-2 at ¶ 7. Middleton executed similar consents on behalf of the entity defendants. Dkt. No. 60-3 and 60-4. The following day, November 1, 2019, the Court signed and entered the Consent Judgment. Dkt. 61.

## LEGAL STANDARD

"In extraordinary circumstances, Rule 60(b) may be invoked to override the finality of judgments in the interests of justice," but "the Rule does not allow district courts to 'indulge a party's discontent over the effects of its bargain.'" *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir. 1994) (quoting *Kozlowski v. Coughlin*, 871 F.2d 241, 246 (2d Cir.1989)).

Two separate but related provisions of Federal Rule of Civil Procedure 60 provide relief from a final judgment based on fraud—Rule 60(b)(3) and Rule 60(d)(3). Rule 60(b)(3) allows a party to seek relief from a judgment based on "fraud . . . misrepresentation, or misconduct by an

opposing party." But relief under Rule 60(b)(3) must be sought no later than one year from the

entry of judgment. Fed. R. Civ. P. 60(c).

Rule 60(d)(3) provides that a court may "set aside a judgment for fraud on the court."

Although Rule 60(d)(3) does not include a time limitation, the standard for such a fraud showing

"is extremely high" and "narrower in scope than that which is sufficient for relief by timely

motion [under 60(b)(3)]." *Aneja v. M.A. Angeliades, Inc.*, No. 05-CV-9678, 2010 WL 199681, at

*2 (S.D.N.Y. Jan. 12, 2010) (quoting *Gleason*, 860 F.2d at 558. Furthermore, "relief under Rule

60(d) is [] disfavored and will usually require a showing of exceptional circumstances." *Azkour*

*v. Little Rest Twelve*, No. 10-CV-4132, 2017 WL 1609125, at *7 (S.D.N.Y. Apr. 28, 2017)

(internal quotation marks and citations omitted). "'Examples of conduct' that reaches this high

standard 'include bribery of a judge, jury tampering, or hiring an attorney for the sole purpose of

improperly influencing the judge.'" *Philips Lighting Co. v. Schneider*, No. 05-CV-4820 SLT

MDG, 2014 WL 4274182, at *6 (E.D.N.Y. Aug. 28, 2014) (quoting *United States v. Bennett,* No.

S197CR639, 2004 WL 736928, at *2 (S.D.N.Y. Apr. 5, 2004). "Fraud upon the court must be

established by clear and convincing evidence." *King v. First Am. Investigations, Inc.*, 287 F.3d

91, 95 (2d Cir. 2002).

Courts have noted the potential overlap between these two provisions, admonishing that

Rule 60(d)(3) cannot be used to circumvent the time limitation of Rule 60(b)(3). *Anderson v.*

*New York*, No. 07 CIV. 9599 SAS, 2012 WL 4513410, at *4 (S.D.N.Y. Oct. 2, 2012) ("[Where]

movant could have pursued a timely Rule 60(b)(3) motion but inexcusably failed to do so, the

movant is precluded from relying on Rule 60(d) to bring [her] claims outside of Rule 60(b)(3)'s

one-year statute of limitations period.").

Critically for the instant motion, "relief for fraud on the court is available only where the fraud was not known at the time of settlement or entry of judgment," since "allowing parties to raise issues that should have been resolved at trial amounts to collateral attack and undermines 'the deep rooted policy in favor of the repose of judgments.'" *Sierra Pac.*, 862 F.3d at 1168 (quoting *Hazel–Atlas,* 322 U.S. at 244)).

## ARGUMENT

**I.    DEFENDANTS HAVE NOT MET THE "EXTREMELY HIGH" STANDARD FOR PROVING "FRAUD ON THE COURT" UNDER RULE 60(d)(3).**

The Court should deny Defendants' motion because their fraud allegations are both meritless and utterly insufficient to meet the high standard required to vacate a consent judgment under Rule 60(d)(3).[1]

**A.    Allegations of Fraud Regarding the Kraken Account and Business Purpose of Certain Large Transfers Are Meritless and Insufficient on Their Face**

Defendants allege primarily that the SEC misled the Court by (1) asserting that the Kraken account belonged to Middleton personally; and (2) omitting that certain large asset transfers allegedly were consistent with other pre-litigation transfers that, Middleton claimed, were necessary to fund legitimate business expenses. *See*, *e.g.*, Mot. at 3 (alleging "the fabrication of evidence relating to the ownership of the Kraken exchange account (personal vs. corporate)"; *id.* at 7 (alleging "the SEC's deceptive omission of the transfers' routine nature.").

To begin with, Defendants' fraud allegations constitute, at best, reckless hyperbole. Contrary to Middleton's assertions, the SEC candidly informed the Court at the outset of this

---

[1] Defendants' motion is not a model of clarity. Its insistence at the outset that the Court review essentially every document filed in this case "and combine the entirety of them to distill a theme" (Mot. 1) previews the difficulty in delineating Defendants' "fraud on the Court" assertions. In any event, as explained below, the close examination that Defendants urge only confirms that their fraud allegation is meritless and otherwise insufficient to satisfy Rule 60(d).

case that questions remained about the number of accounts that Mr. Middleton controlled and the

extent of his control (due, in part, to Middleton freely moving assets between personal and

business accounts).  Seibert Ex. 9 (Hearing Transcript) at 36:18-41:21.  Judge Hall noted this

uncertainty (*id.* at 37-38), emphasized that the burden for a TRO to maintain the status quo was

low (*id.* at 20), and that any relief she ordered would only be in place for two weeks or less while

the parties took discovery, briefed the issues, and prepared for the imminent hearing (*id.* at 13).

Moreover, Defendants do not currently dispute much of the other TRO evidence that the SEC

presented to the Court in 2019, including that Middleton had executed and continued to have the

ability to execute large transfers of blockchain assets and bank funds; that Middleton had

commingled investor proceeds with his personal funds; and that Middleton used the funds to pay

his personal expenses.  *See* Dkt. No. 46 (SEC Reply) at 14-15; Dkt. No. 7 (Memorandum in

Support of Emergency Application) at 15-16.

     In any event, Defendants' allegations do not warrant relief from the Consent Judgment

under Rule 60(d) because Defendants *knew* about these alleged misstatements well before the

Court entered the Consent Judgment.  Indeed, as Defendants point out, their counsel objected to

them at the TRO oral argument and related briefing before the Court.  Mot. at 7-8; Seibert Ex. 9

at 11:3-17.  Moreover, two months before the Court entered the Consent Judgment, the SEC's

expert corrected any misstatement regarding the nominal title of the Kraken account.  Dkt. No.

43 at ¶ 13. Defendants have known all these facts for almost six years.  Relief under Rule

60(d)(3) is simply unavailable in these circumstances.  *See*, *e.g., Sierra Pac.*, 862 F.3d at 1168;

*Anderson*, 2012 WL 4513410, at *5 (denying Rule 60(d)(3) motion where "[t]he grounds

supporting a claim of fraud were known by plaintiff and raised with the Court . . . almost four

years ago."); *In re Old Carco LLC*, 423 B.R. 40, 57 (Bankr. S.D.N.Y. 2010), *aff'd,* No. 10

CIV.2493 (AKH), 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010) (noting Rule 60(d)(3) requirement that moving party "has been precluded from fully and fairly representing its case…. during the adversary process.") *aff'd sub nom. Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir. 2011).

Defendants further fail to demonstrate fraud on the Court because the Court never had occasion to address—much less be defrauded by—those statements in ordering the Consent Order that is the subject of their motion. As Defendants acknowledge, "no findings of fact were ever made" in connection with the preliminary injunction (Mot. at 8) because Defendants consented to it (Dkt. No. 50-51). The Consent Order came even later and also required no findings of fact. Thus, the alleged fraud "could not have interfered with the Court's ability to perform its impartial task of adjudging cases, because the Court was never asked to perform that task." *Giurca v. Montefiore Health Sys., Inc.*, No. 18-CV-11505, 2023 WL 9102694, at *12 (S.D.N.Y. Dec. 21, 2023) (internal citations and quotation marks omitted) (noting that settling plaintiff failed to "explain how defendants' alleged misconduct affected the Court's adjudication of this case, as opposed to his own litigation decision-making.") *report and recommendation adopted*, No. 18-CV-11505, 2024 WL 1193574 (S.D.N.Y. Mar. 20, 2024) (holding that "*even if* the misrepresentation was intentional *and* a single misrepresentation could constitute fraud upon the court, it is nonetheless fatal to Giurca's argument that the case was disposed of based on *his* voluntary dismissal."). Defendants' additional contention that they somehow were prevented from making these arguments before the Court entered the Consent Judgment ignores Defendants *did* make these arguments, only to abandon them.

Defendants dismiss as irrelevant their prior knowledge of the SEC's alleged "fraudulent scheme," mistakenly asserting that "[i]t is not for the Defendants to correct the record in the face

of a lie from the SEC." Mot. at 4. Defendants misconstrue the fundamental purpose of Rule 60: to address misstatements or other misconduct that *could not* otherwise be addressed through the adversarial process. "[W]here the moving party through due diligence could have discovered the alleged perjury or non-disclosure, such fraud does not disrupt the judicial process and thus does not constitute fraud on the court." *Sierra Pac.*, 862 F.3d at 1169 (internal citations and quotation marks omitted); *Gleason*, 860 F.2d at 560 (the aggrieved party "must be able to show that there was no 'opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action.'") (quoting *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 n.2 (2d Cir. 1972)); *Marco Destin, Inc. v. Levy*, 2023 WL 5530364, at *4-6 (S.D.N.Y. Aug. 28, 2023) (denying relief where plaintiff "had every opportunity in the Underlying Action to use the tools available in the adversarial process" to uncover the truth, notwithstanding that its adversary lied under oath and "purposefully withheld" key evidence). Where, as here, the movant voluntarily abandoned those tools, he will not be heard later "to complain that he was denied the opportunity to uncover the alleged fraud." *Gleason*, 860 F.2d at 559.[2]

Although Defendants incorrectly frame the SEC's opposition to their motion as sounding in "laches," Mot. at 3, it is true that Courts also routinely reject similar motions as an improper end-run around the one-year limit for Rule 60(b)(3) motions. *Anderson*, 2012 WL 4513410, at *4

---

[2] Despite the many applicable cases in the Second Circuit above, Defendants imply that only two cases, both in the Ninth Circuit, address what they mistakenly describe as the "narrow area of law" addressing Rule 60(d)(3) motions by parties who knew of the alleged fraud when they settled. (Mot. at 23.). They nevertheless do not seem to dispute that both cases support the SEC's position. *See Sierra Pac.*, 862 F.3d at 1168 (described above); *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995) (defendant's in-house counsel committed fraud on the court where, unbeknownst to plaintiff, defense counsel withheld inculpatory video showing gun accidentally firing in manner that supported plaintiff's wrongful death theory). Although, Defendants' misdescription of *Pumphrey* suggests they may be referring to a different case. The Motion describes *Pumphrey* as "a patent infringement case related to the 'Gunslick' cleaning rod," where an attorney "fabricated a video showing the 'Gunslick' rod in use prior to the patent filing." Mot. at 23. In fact, *Pumphrey* is a product liability case that makes no mention of patents or cleaning rods.

10

(S.D.N.Y. Oct. 2, 2012); *E. End Eruv Ass'n, Inc. v. The Vill. of Westhampton Beach*, No. CV 11-213 AKT, 2015 WL 5774981, at *3 (E.D.N.Y. Sept. 30, 2015) (rejecting 60(d)(3) motion as time barred because movant "has provided no reason why the alleged fraud committed by Plaintiffs could not have been brought to the Court's attention within one year of the entry"). But to be clear, Defendants' motion would fail even if it had been brought the day after the Court entered the Consent Judgment, because Rule 60 provides relief only for "after-discovered" fraud. *Hazel-Atlas*, 322 U.S. at 244; *see also Sierra Pac.*, 862 F.3d at 1168. In this case, as explained above, Defendants were aware of all of the essential facts that they now assert prior to the date the Court entered the Consent Judgment.

## B. Defendants' Additional Misconduct Allegations Are Baseless and Fail as a Matter of Law

The Motion asserts a number of additional alleged instances of SEC misconduct, which are likewise baseless and, in any event, fail to satisfy Rule 60(d)(3).[3]

The Motion includes a long discussion of alleged SEC "dishonorable conduct" during the SEC's pre-litigation investigation of this case, including that then-SEC counsel allegedly did not properly serve a subpoena, mocked Middleton during a deposition, and did not provide certain unpublished updates to the SEC's enforcement manual. *See, e.g.*, Mot. 5-6. During this part of the SEC's investigation, Defendants were represented by their current counsel Mr. Siebert, who had been replaced before the litigation was filed. Defendants' exhibits supporting this so-called dishonorable conduct, though self-serving, plainly establish that these allegations are baseless. *See, e.g.*, Seibert Exs.1-6.

---

[3] Defendants refer to "dishonorable conduct" throughout the brief, in some instances implying it provides a separate avenue for relief under *SEC v. ESM Government Securities, Inc.*, 645 F.2d 310, 317 (5th Cir. 1981). *ESM* is easily distinguished, as it addressed only whether the SEC could enforce an administrative subpoena (after allegedly not disclosing the existence of its investigation), not a Defendant's request to undo a prior voluntary settlement. *Id.* at 311-313, 317-318.

In any event, these additional allegations likewise fail to support Rule 60 relief because they were known to Defendants before the Court entered the Consent Judgment. Indeed, Defendants do not even attempt to explain why they never raised them with the Court in this case. Moreover, Defendants fail to establish how any such alleged "dishonorable conduct" affected any order of this Court, much less the Consent Judgment that is the subject of Defendant's Motion, thus precluding Rule 60 relief. *See Giurca*, 2023 WL 9102694, at *12.

Defendants further argue that the declaration of third-party witness Michael Middleton—which the SEC submitted with its reply brief in support of its TRO application—was "tainted" because Mr. Middleton had "suffered an injury that impaired his memory and brain function" and "received alcohol abuse treatment that potentially impacts his memory." Mot. at 12. But again Defendants knew of Mr. Middleton's alleged infirmities at the time of the Consent Judgment. Having made the calculated choice to settle rather than cross examine Mr. Middleton regarding any such infirmities at a hearing, Defendants cannot now invoke Rule 60 to undo the Consent Judgment. *See Gleason*, 860 F.2d at 559 (arrestee cannot vacate prior judgment based on allegations of unreliable eyewitness testimony and perjury, where he "had the opportunity in the prior proceeding to challenge the police officers' account of his arrest").

Finally, Defendants point to statements by Michael Sheahan and Lloyd G. Cupp III as evidence that the SEC "chilled witnesses for the defense." Mot. at 16. Mr. Sheahan submitted a declaration in support of Defendants' opposition to the TRO, and the SEC subpoenaed him for testimony. Defendants allege primarily that the SEC was "aggressive, abusive, and threatening" during Sheahan's testimony—including through A/V technical glitches that Mr. Sheahan took to be acts of psychological aggression. *See* Mot. at 16, Dkt. 120-11 at 1-2. Again, the Court need not address these specious allegations other than to note that (1) Defendants' counsel attended

12

the deposition and did not raise any issue regarding it with the Court; and (2) Defendants make no credible attempt to tie this deposition to the Consent Judgment. *Id.* Even weaker are Defendants' assertions regarding Mr. Cupp, who during a phone call with SEC staff allegedly felt "pressured" (though "not explicitly threatened") to provide testimony in favor of the SEC but ultimately did not provide testimony. *See* Mot. at 16; Dkt. 120-12. Defendants once again fail to explain how the alleged failure to coerce testimony relates to the Consent Judgment.

***

None of Defendants' arguments or evidence meet the "clear and convincing" standard required to establish fraud on the court. *King*, 287 F.3d at 95. The evidence presented in the Motion was well known to Defendants at the time they opposed the SEC's application for a TRO. Moreover, Defendants chose to voluntarily consent to a preliminary injunction and asset freeze, resolving the issues raised in the SEC's motion for a TRO. And Defendants then, freely and voluntarily, entered into a settlement of the entire action, without raising any concern over issues that they now contend (nearly six years later) constituted "fraud on the court." Defendants' thus fail to satisfy the Rule 60(d)(3) requirements to vacate the Consent Judgment in this case.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Motion.

13

DATED:  June 20, 2025                    Respectfully submitted,

                                         s/ J. Emmett Murphy
                                         J. EMMETT MURPHY
                                         BEN KURUVILLA
                                         United States Securities and Exchange Commission
                                         New York Regional Office
                                         100 Pearl Street, Suite 20-100
                                         New York, New York 10004
                                         Ph: 212-336-5599
                                         kuruvillabe@sec.gov
                                         murphyjoh@sec.gov

                                         ATTORNEYS FOR PLAINTIFF UNITED STATES
                                         SECURITIES AND EXCHANGE COMMISSION