

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

January 30, 2026

**Via ECF**

The Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *SEC v. Reginald Middleton*, Case No. 1:19-cv-4625-WFK-VMS

Dear Magistrate Scanlon,

      Plaintiff U.S. Securities and Exchange Commission respectfully submits this response to Defendants' motion to appoint a Special Master. ECF No. 158.

      A Special Master is not warranted here because all of the crypto assets that were transferred to Holland & Knight LLP[1] (the "Crypto Assets"[2] and the "Distribution Agent,"[3] respectively) were liquidated, and the proceeds were transferred to an SEC-designated account at the U.S. Department of the Treasury. The Declaration of Josias N. Dewey on Behalf of Holland & Knight LLP ("Dewey Declaration") filed with this response, and the exhibits thereto, show that all assets are properly accounted for. Additionally, the Distribution Agent safely and securely handled the Crypto Assets by having them deposited in a dedicated account at Coinbase,[4] and the movement of specific tokens, as described in Defendants' motion, did not affect the value of the account or the Distribution Agent's ability to withdraw the Crypto Assets on demand.[5]

---

[1] *See* ECF No. 55 – Letter of Josias N. Dewey of August 26, 2019, describing crypto assets received by Holland & Knight.

[2] The term Crypto Assets, as used herein, refers to a certain quantity of Ethereum and Bitcoin and not to specific tokens.

[3] Holland & Knight LLP was initially appointed by the Court as an Independent Intermediary [ECF No. 51], and it became the Distribution Agent upon the Court's establishment of the Fair Fund. ECF No. 61.

[4] The Coinbase account referred to herein was opened by the Distribution Agent for use in this case only, and the account title reflected the same.

[5] This brief uses the terms "address" and "account." An "address" is a string of alphanumeric characters. E.g. Dewey Declaration, ¶ 5. A wallet can contain multiple addresses. The term "account" is intended to have its

On August 21 and 22, 2019, Defendant Middleton transferred 37,960.02503 Ethereum ("ETH") and 42.768 Bitcoin ("BTC") to the Distribution Agent's Ethereum and Bitcoin deposit addresses associated with its dedicated account at Coinbase, and on November 28, 2019, an additional 900.50 ETH relating to Defendants' assets was transferred to the Distribution Agent's Coinbase account. In total, the Distribution Agent received and held 38,860.52503 ETH and 42.768 BTC. Dewey Declaration, ¶¶ 2-4, ¶ 13, and Ex. 1. The Ethereum and Bitcoin addresses into which these assets were deposited were dedicated addresses generated by Coinbase for the purpose of assisting the Distribution Agent with taking custody of and safeguarding the Crypto Assets. *Id.* at ¶ 6. The Court authorized the Distribution Agent to liquidate these assets by order entered on August 5, 2020 [ECF No. 72], and, pursuant to that order, the Distribution Agent liquidated all 38,860.54 ETH and all 42.77 BTC.[6] *Id.* at ¶¶ 14-17, and Ex. 2. The Net Total sale proceeds were $15,433,254.11. *Id.* at ¶ 15, and Ex. 2. On August 20, 2020, the Distribution Agent caused $15,433,258.94 to be wired from the Coinbase account to an SEC-designated account at the U.S. Department of the Treasury. *Id.* at ¶ 19, and Exs. 1 and 3. To summarize, the Distribution Agent liquidated all of the Crypto Assets and sent all of the liquidation proceeds to the SEC.

The Distribution Agent held the Crypto Assets in a safe and secure manner. It deposited the Crypto Assets in a dedicated account at Coinbase, which was at that time and is still today a highly respected and trusted custodian of digital assets. Coinbase is a well-capitalized, insured, centralized exchange with robust safeguards. It is located in the United States, requires multifactor authentication, holds insurance related to its hot wallets,[7] and provides customer support. Coinbase also provides support for the liquidation of assets held by court appointed fiduciaries, such as here. *Id.* at ¶¶ 11-12. Depositing the Crypto Assets with Coinbase met the Court's requirement that the assets be "securely held." ECF No. 9, p. 2.

Coinbase uses unique wallet addresses for user deposits, and upon such deposits, the user's account is credited the equivalent value of the assets deposited. Dewey Declaration, ¶ 7. Like U.S. dollars, Ethereum and Bitcoin are fungible. *Id.* at ¶ 8. And as with traditional banking, when a user deposits Ethereum and Bitcoin at Coinbase, they do not hold a proprietary claim to the specific tokens deposited, but rather, they hold a right to redeem an equivalent amount of the asset. *Id.* at ¶¶ 7-8. Coinbase transfers and aggregates the assets via secondary transactions from the individual deposit addresses in a similar fashion as any other financial institution would engage in with respect to cash being brought into a branch for a deposit. *Id.* at ¶ 8. Defendants' claim that the Distribution Agent misappropriated the Crypto Assets is baseless because the way the Distribution Agent and Coinbase handled the Crypto Assets is equivalent to how a customer and a traditional bank handles a cash deposit; the deposited cash is used in secondary transactions while

---

ordinary meaning, analogous to an account at a traditional financial institution, wherein a third-party maintains a ledger of a customer's transactions and account values.

[6] Slight differences in the amounts received and liquidated—for example, 42.768 BTC received versus 42.77 BTC liquidated—could be attributable to rounding errors, transaction fees, or other causes. According to the Coinbase transaction records filed as exhibits with the Dewey Declaration, the amount of both ETH and BTC liquidated was slightly *more* than the amount received, so this discrepancy does not suggest that assets are missing. Lastly, a comparison of the deposit transactions on the blockchain and the liquidation receipts show that the exact amounts transferred into account were liquidated and transferred out.

[7] A "hot wallet" is a cryptocurrency wallet that is analogous to a business' operating account, as opposed to cold wallets being analogous to savings accounts.

the customer retains the right to withdraw an equivalent amount. These secondary transactions do not affect the value of the user's account or the user's ability to withdraw an equivalent amount of assets on demand. *Id.* at ¶ 9.

Appointment of a Special Master is warranted when there is (i) some exceptional condition; or (ii) the need to perform an accounting or resolve a difficult computation of damages. FRCP 53(a)(1)(B). No exceptional condition exists here. As shown above, all the Crypto Assets and liquidation proceeds are accounted for.[8] There is also no need to resolve a difficult computation of damages, as the damages here were agreed upon in a settlement between the parties in 2019. For these reasons, the SEC respectfully requests that the Court deny Defendants' motion for appointment of a Special Master.

Sincerely,

*Allison Moon*

Allison J.P. Moon
Trial Counsel for the U.S. Securities and
Exchange Commission
(202) 551-3015
moona@sec.gov

Enclosure
Declaration of Josias N. Dewey and exhibits thereto.

---

[8] For this reason, there is also no need to appoint a neutral forensic accountant under Federal Rule of Evidence 706.