UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
SECURITIES AND EXCHANGE COMMISSION,  :
:
                Plaintiff,   :
:      **ORDER AND**
           -against-   :      **REPORT AND**
:      **RECOMMENDATION**
REGINALD ("REGGIE") MIDDLETON,   :
VERITASEUM, INC. AND VERITASEUM, LLC,   :      19 Civ. 4625 (WFK) (VMS)
:
                Defendants.   :
------------------------------------------------------------ x

**Vera M. Scanlon, Chief United States Magistrate Judge:**

Before the Court are two motions related to the final distribution of funds in this Securities and Exchange Commission ("SEC") enforcement action. Plaintiff seeks an order approving the consolidated final accounting report ("CFAR"), discharging the Distribution Agent and terminating the Fair Fund. "Motion for Final Approval," ECF No. 141. Defendants move to appoint a special master pursuant to Fed. R. Civ. P. 53(a)(1)(B)(ii). "Motion to Appoint," ECF No. 158. The motions are addressed together herein.

For the reasons set forth below, this Court denies the Motion to Appoint and respectfully recommends that the Motion for Final Approval be granted.

**I.    BACKGROUND**

On August 12, 2019, Plaintiff filed the Complaint, ECF No. 1, against Reginald Middleton, Veritaseum, Inc. and Veritaseum, LLC (collectively, "Defendants"), bringing claims under the Securities Act related to digital securities. On October 31, 2019, the parties moved for Court approval of a consent judgment, ECF No. 60, which was entered on November 1, 2019. "Consent Judgment," ECF No. 61.

The Consent Judgment, inter alia, established a fund ("Veritaseum Fair Fund" or "Fair Fund"), composed of Defendants' assets, to be used to pay a civil penalty and distribute funds to

1

investors harmed by Defendants' actions.  See Consent Judgm. ¶ VII.  Holland & Knight LLP ("Distribution Agent") was appointed to manage and distribute the funds.  Id. ¶ X.

### A. Reporting Requirements Under Consent Judgment

As relevant to the motions, the Consent Judgment provides that, inter alia, the Distribution Agent "[f]ile with the Court . . . a quarterly status report," which must include

> an interim account of all monies in the Veritaseum Fair Fund as of the most recent month-end, including the value of the account(s), all monies earned or received into the account(s), funds distributed to eligible claimants under the Plan, and any monies expended from the Veritaseum Fair Fund to satisfy fees, expenses, and taxes, incurred or required in the administration of the Veritaseum Fair Fund or the implementation of the Plan . . . ."

Id. ¶ X(i)(iii).

The Consent Judgment provides further that "[t]he Commission is authorized to approve and arrange payment of all tax obligations owed by the Veritaseum Fair Fund and the fees and expenses of Holland & Knight and Miller Kaplan [ "Tax Administrator"] directly from the Veritaseum Fair Fund without further order of this Court."  Id. ¶ XIII.  The Distribution Agent and Tax Administrator must submit to Plaintiff's counsel for review and payment "all fees and expenses incurred in connection with their respective duties," with any payments "reflected in the quarterly and final accountings . . . ."  Id.

Upon completion of their duties, pursuant to the Consent Judgment, the Distribution Agent and Tax Administrator are required to jointly provide to Plaintiff's counsel

> a final accounting in a form provided by the Commission's counsel of record; a final report providing statistics related to the distribution, including amounts disbursed to investors, amounts returned and/or not delivered or negotiated, outreach efforts on unnegotiated payments and the costs and results of the same, and statistics concerning payments made to individuals and entities; and an affidavit in a format acceptable to the Commission's counsel of record summarizing their activities as distribution agent and tax administrator.

Id. ¶ XIV.

### B. Subsequent Relevant Procedural History

After entering the Consent Judgment, the Court approved the initial publication of notice regarding the distribution process. See ECF No. 80. After Plaintiff informed the Court that it had not received any objections to the proposed distribution process, see ECF No. 81, the Court approved the proposed claims process and distribution plan. See ECF No. 82 (approving "Distribution Plan," ECF No. 78-2). Pursuant to the terms of the Distribution Plan, disbursements from the Fair Fund were made to all eligible claimants. See Dewey Decl. ¶¶ 3-16, ECF No. 142-2.

Beginning on April 16, 2021, and continuing through January 26, 2024, the Distribution Agent filed quarterly status reports pursuant to the Consent Judgment. See ECF Nos. 83-95. On January 17, 2025, the parties requested approval of a briefing schedule for the Motion for Settlement, ECF No. 98, which the Court approved, ECF No. 99.

On May 30, 2025, Defendants filed a motion, pursuant to Fed. R. Civ. P. 60(d)(3), to vacate the Consent Judgment, see ECF No. 118, which the Court denied, see 7/14/2025 Order.[1]

On July 25, 2025, Defendants moved to compel production of accounting records related to pages that Defendants contend were missing from the CFAR. See "Motion to Compel," ECF No. 130. On August 5, 2025, Plaintiff filed the Motion for Settlement. Oral argument on the Motion for Settlement and Motion to Compel was held before this Court. See Tr. 8/27/2025 Oral Arg., ECF No. 154. In accordance with what was discussed on the record, Plaintiff filed an updated CFAR. See ECF No. 151.

---

[1] Defendants have appealed the Court's denial of their motion for reconsideration. See Not. of Appeal, ECF No. 153.

On December 9, 2025, "in light of the persistent disagreement between the parties regarding the fullness of any accounting of funds," the Court directed Plaintiff "to file in one document the quarterly accounting reports for each quarter for which a quarterly report was submitted." 12/9/2025 Order. On January 23, 2026, Plaintiff filed the complete quarterly reports. See ECF No. 159.

On January 22, 2026, Defendants filed the Motion to Appoint, which Plaintiff opposes, "Opp. to Appoint," ECF No. 161. On February 5, 2026, Defendants filed an unsanctioned reply, ECF No. 164, which was stricken for failure to comply with this Court's individual rules regarding letter motions, see 2/6/2026 Order.

## II.   DISCUSSION

### A. Motion To Appoint

In their opposition to the Motion for Settlement and to the Motion to Appoint, Defendants make several overlapping arguments regarding the alleged incompleteness of any final accounting and the propriety of distributing any residual funds to the U.S. Treasury. See generally Mot. to Appoint, Opp. to Settlement.

In support of their request that a special master be appointed, Defendants contend that assets were "apparent[ly] misappropriate[d] prior to the Fair Fund Creation." Mot. to Appoint at 4. Defendants argue further that the Distribution Agent "failed to inform the Court of the movement of funds, and misled the parties and the Court that the funds were held" in the address the Distribution Agent specified. Mot. to Appoint at 2.

Plaintiff explains that the assets were managed in a way that is "equivalent to how a customer and a traditional bank handles a cash deposit: the deposited cash is used in secondary

transactions while the customer retains the right to withdraw an equivalent amount." Opp. to Appoint at 2-3.

Defendants do not identify how any purported mismanagement by the Distribution Agent resulted in any loss of any funds, nor any harm they suffered as a result of any alleged mismanagement. Although Defendants imply that the Distribution Agent failed to comply with its obligations to hold the funds properly in escrow, see Mot. to Appoint at 4 (requesting a special master to "[i]dentify transfers inconsistent with escrow/controlled custody requirements"), Defendants do not specify any term of the Consent Judgment or Distribution Plan that the Distribution Agent violated, or any particular transaction that breached any particular obligation imposed on the Distribution Agent or that caused a specific loss.[2] Defendants otherwise do not provide any evidence of impropriety on the part of the Distribution Agent or legal support for appointment of a special master to remediate any alleged misconduct.

Accordingly, the Court will not appoint a special master to retrospectively review the work of the agent appointed by the Court to handle its Court-approved responsibilities, given that the Distribution Agent filed reports for almost three years but Defendants moved for any related relief for the first time in May 2025. See Mot. to Vacate, ECF No. 118. If Defendants had legitimate concerns about the work reported in the quarterly reports, they should have timely brought them to the Court's attention with specificity.

---

[2] The crux of Defendants' argument in favor of appointing a special master is that the Distribution Agent did not, as stated to the Court, see ECF No. 55, hold the digital assets "securely . . . in escrow pending further direction of the Court." See Mot. to Appoint at 2-3. Even if the locations in which the digital assets were held did not constitute a "secure escrow location," id. at 2, which the Distribution Agent disputes, see Dewey Decl. ¶ 10, ECF No. 161-1, Defendants do not actually state any harm arising from this alleged mismanagement, let alone any controlling Order of the Court or other legal requirement that the Distribution Agent violated, such that the Court would order the relief that Defendants seek.

The Motion to Appoint is therefore denied.

**B. Motion For Settlement**

Plaintiff moves to close the distribution in this action by (1) approving the CFAR, (2) discharging the Distribution Agent, (3) terminating the Fair Fund, and (4) directing the SEC to remit any remaining funds to the general fund of the U.S. Treasury. See Pl. Mem. for Settlement, ECF No. 142.

Defendants oppose the Motion for Settlement for two main reasons. First, they contend that the transfer to the U.S. Treasury of any residual balance in the Fair Fund would constitute an impermissible windfall under Liu v. SEC, 591 U.S. 71 (2020). See Opp. to Settlement at 3, 5-6. Second, Defendants argue generally that the information provided by Plaintiff is incomplete. See id. at 4-5.

**1. Terms Of Distribution Plan**

On January 15, 2021, the Court approved the Distribution Plan, which provides that, inter alia, "the Distribution Agent will provide reports in accordance with the [Consent] Judgment, including, in consultation with the Tax Administrator, a final accounting and final report." Distr. Plan § X. The Distribution Plan provides further that "[o]nce all Distribution Payments have been negotiated or voided, any funds remaining in the Escrow and Deposit Accounts will be transferred to the SEC . . . [and] [t]he SEC staff will seek an Order from the Court as appropriate, approving the final accounting, discharging the Distribution Agent, and terminating the Veritaseum Fair Fund." Id. § XI. "The Veritaseum Fair Fund will be eligible for termination and the Distribution Agent will be eligible for discharge after all of the following have occurred: 1. A final report and accounting has been submitted to and approved by the Court; 2. All

6

Administrative Costs have been paid; and 3. The Court has approved the SEC's recommendation as to the final disposition of the Residual consistent with Liu . . . ." Id.

### 2. Approval Of CFAR

Defendants oppose approval of the CFAR for several reasons.

Defendants contend that the "CFAR exhibits are incomplete, with multiple pages missing." Opp. to Settlement at 4. In light of Plaintiff's supplemental filings,[3] see ECF Nos. 151-1, 159-1, however, this objection is moot.

Defendants argue that the CFAR is inadequate because the "accounting has not been published via PACER or otherwise, preventing Fair Fund beneficiaries from reviewing and objecting," which "denies due process and contravenes the purpose of disgorgement [of] funds." Opp. to Settlement at 5 (citing Liu, 591 U.S. at 89). Defendants appear to contend that the alleged incompleteness of the CFAR means that any complete accounting of funds is not public. As discussed above, in light of the supplemental filings, this argument is also moot.

Defendants state that the denials of Freedom of Information Act ("FOIA") requests made by Defendants and non-party VeriDAO "suggests ongoing investigations that may impact the accounting." Opp. to Settlement at 5. Except for conclusory allegations, Defendants do not provide any support for this contention.

As discussed above with respect to the Motion to Appoint, Defendants request that the CFAR be "audited" due to the alleged absence of "critical information." See Opp. to Settlement

---

[3] Nevertheless, Defendants continue to state, without support, that there are additional purported deficiencies in the Distribution Agent's work, contending that the CFAR "lists digital tokens that are not accounted for in the transaction records reported by [the Distribution Agent]." ECF No. 162. "Defendants believe that the handling of the assets reported by [the Distribution Agent] violated Court Orders" at ECF Nos. 51, 61. Id. (emphasis added). It is not the Court's responsibility to comb the record for evidentiary support for Defendants' arguments, which Defendants have failed to provide.

7

at 5.  Defendants do not state what information is allegedly missing from the CFAR such that the accounting, which was produced by the Court-appointed Distribution Agent, must be reviewed by a third party.  Defendants also do not identify any accounting errors in the CFAR, and they do not contend that any funds were distributed in contravention of the terms ordered by the Court.[4]

Having reviewed the CFAR, as supplemented with the Quarterly Accountings, ECF No. 159-1, the Court finds that the distribution was effectuated in accordance with the terms of the Consent Judgment and the Distribution Plan.[5]

### 3. Remitting Residual Funds To U.S. Treasury, Closing Fair Fund And Terminating Distribution Agent

Plaintiff requests that all funds remaining in the Fair Fund be deposited in United States Treasury, pursuant to 15 U.S.C. § 78u.  See Pl. Mem. for Settlement at 7.  Defendants oppose transfer of any funds to the U.S. Treasury because they would constitute a "windfall" in violation of Liu.  See Opp. to Settlement at 5-6.

The Distribution Plan provides that if any funds remain "after the distribution is complete and all Administrative Costs have been paid . . . and the Distribution Agent, in consultation with the SEC staff, has determined further distributions to be infeasible . . . the SEC staff will file a motion with this Court to approve the final accounting . . . [which] may recommend the transfer of the Residual to the general fund of the U.S. Treasury subject to Section 21F(g)(3) of the Exchange Act."  Distr. Plan ¶ IX.

---

[4] Defendants argue that Plaintiff "underpa[id] alleged investors by millions" on account of the difference in the Assets' value between 2017 and 2019.  Opp. to Settlement at 6.  Defendants do not provide any support for their contention that compensating victims "based on historical values, not present day values," id., is unlawful or otherwise violates the Court's Orders.

[5] Defendants state in a conclusory manner that Plaintiff "excludes certain claimants without adequate justification, and no evidence confirms all eligible claims were fully validated."  Opp. to Settlement at 7.  Defendants do not state which claimants were excluded without justification or provide evidence demonstrating that any eligible claim was not fully compensated.

Plaintiff states that "the Distribution Agent has distributed approximately $10.8 million to Eligible Claimants," which represents 100% of their losses plus interest. See Pl. Mem. for Settlement at 5; see also Dewey Decl. ¶ 16, ECF No. 142-2 (stating that "all Eligible Claimants have been fully compensated for their Total Loss Amounts plus Reasonable Interest," which renders "further distribution infeasible"). Plaintiff thus seeks an order directing any present and future funds in the Fair Fund to be transferred to the U.S. Treasury. See Pl. Mem. for Settlement at 7.

Defendants oppose distribution of the residual funds to the U.S. Treasury because the "CFAR fails to deduct Defendants' legitimate business expenses from disgorgement amounts," in the amount of $4.4 million that was "incurred during the relevant period." Opp. to Settlement at 4. Defendants contend that the proposed disbursal to the U.S. Treasury constitutes a "windfall" proscribed by Liu, which held that "courts must deduct legitimate business expenses before awarding disgorgement under § 78u(d)(5)." 591 U.S. at 91-92.

Here, disgorgement occurred more than six years ago. On November 1, 2019, Defendants consented to the entry of Consent Judgment, which ordered "disgorgement of $7,891,600, representing certain profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $582,535, for a total of $8,474,137." Consent Judgm. ¶ VII. The record does not reflect that, before entry of the Consent Judgment, Defendants objected to any failure to deduct expenses from the amount of disgorgement. Indeed, even if Defendants were to demonstrate that the disgorgement was incorrectly calculated—which they have not—Defendants, in consenting to the entry of the Consent Judgment, waived any such argument. See id. ¶ XVIII (waiving "findings of fact and conclusions of law" and "any right to appeal from this [Consent] Judgment"). Defendants

otherwise do not provide any legal support for their contention that the alleged failure to deduct expenses inhibits approval of the CFAR and termination of the Fair Fund. They are also raising these objections more than six years after the Consent Judgement was entered.

Defendants contend further that residual funds in the Fair Fund should not be transferred to the U.S. Treasury because Plaintiff has not established that distribution to victims is infeasible. See Opp. to Settlement at 6. Although Defendants contend that infeasibility "is stated as a conclusion with unsupported accounting information," id., Defendants do not provide any evidence to indicate that all eligible claimants were not paid in full or that the Distribution Agent's accounting fails to demonstrate this infeasibility.

The Court finds that because Plaintiff has confirmed that all potential victims have been paid 100% of their losses plus interest, it is fair and reasonable to transfer the residual funds to the U.S. Treasury, which will assist the government in accomplishing "the greatest good for the greatest number of people." See Sec. & Exch. Comm'n v. CR Intrinsic Invs., LLC, No. 12 Civ. 8466 (VM), 2024 WL 4825954, at *6 (S.D.N.Y. Nov. 19, 2024) (internal quotation omitted) (transferring residual funds to the U.S. Treasury where "no additional victims with a claim for equitable relief"); see also S.E.C. v. Drexel Burnham Lambert, Inc., 956 F. Supp. 503, 508 (S.D.N.Y.) (transferring funds to the U.S. Treasury where infeasible to distribute further), aff'd sub nom. S.E.C. v. Fischbach Corp., 133 F.3d 170 (2d Cir. 1997).

Accordingly, this Court respectfully recommends that any present and future funds in the Fair Fund be transferred to the U.S. Treasury. In light of this recommendation, the Court recommends further that the Fair Fund be closed and that the Distribution Agent be discharged.

### III. CONCLUSION

For the reasons set forth above, the Motion to Appoint is denied. Any appeal must comply with Fed. R. Civ. P. 72(a) and Local Civil Rule 72.1(b). See <u>Sec. & Exch. Comm'n v. Genovese</u>, 553 F. Supp. 3d 24, 38 (S.D.N.Y. 2021).

As discussed above, this Court respectfully recommends that the Motion for Settlement be granted, specifically, that the CFAR be approved, that the Distribution Agent be discharged, that the Fair Fund be terminated and that any present or future funds remaining in the Fair Fund be remitted to the general fund of the U.S. Treasury. Any written objections to this report and recommendation as to the Motion for Settlement must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day objection period. Failure to timely file objections will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See <u>Miller v. Brightstar Asia, Ltd.</u>, 43 F.4th 112, 120 (2d Cir. 2022).

Dated: Brooklyn, New York
February 17, 2026

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge